RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK

DATE ___2 / 11 / 13___

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

WILBERT GENE GREEN #105177          DOCKET NO. 1:12-CV-2293; SEC. P

VERSUS                              JUDGE DRELL

CORRECTIONS CORPORATION OF          MAGISTRATE JUDGE KIRK
AMERICA, ET AL.

## REPORT AND RECOMMENDATION

Pro se Plaintiff, Wilbert Gene Green, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (LDOC), and he is incarcerated at the Winn Correctional Center (WNC) in Winnfield, Louisiana. He complains that he was denied timely medical for a broken finger. He names as defendants Corrections Corporation of America (CCA), Kathy Richardson, Pat Thomas, Dr. Kuplesky, and the LDOC.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Factual Allegations*

Plaintiff complains that, on November 16, 2011, he was sent to the infirmary at WNC for a medical emergency due to an injury suffered while working in the prison print shop. He was examined by Nurse Practitioner Kathy Richardson. He advised that his fingers were lacerated from the printing press machine. [Doc. #1, p.4] Richardson sutured one of the fingers, cleaned the area,

applied gauze wrap, and administered a tetanus shot and pain reliever.  He was given a ten day "lay in" pass. [Doc. #1-2, p.31] Plaintiff experienced pain in the night and the following day.  On November 17, 2011, Plaintiff was called to have his wound dressing changed.  On November 18, 2011, Plaintiff saw the doctor, who immediately referred Plaintiff to the hospital for x-ray and further examination. [Doc. #1, p.5  X-rays revealed one fracture to a finger.  Plaintiff was provided a splint and referred for occupational therapy.  Plaintiff concludes that he has nerve damage and a "permanent crook" in his finger.

Plaintiff alleges that WNC has a custom/policy to deny or delay outside referrals for his medical emergency. [Doc. #1, p.5] He complains that Dr. Kuplesky is liable for failing to properly train the nurse practitioner.  He alleges that Pat Thomas is liable for the policy of delaying immediate outside medical referrals and for not obtaining an immediate x-ray of Plaintiff's fingers.  He complains that CCA is liable for a custom or practice that contributed to a misdiagnosis. [Doc. #1, p.6]

### Law and Analysis

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States.  42 U.S.C. §1983.  Plaintiff complains that he was deprived of timely medical care because he had to wait 48 hours to

2

see a physician for his broken finger.

In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. §1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain ... or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

1. **Serious Medical Need**

First, x-rays of Plaintiff's hand showed a left distal phalanx fracture minimally displaced dorsally. No other fracture was seen. [Doc. #1, p.6] Numerous cases have found that a broken finger does

3

not rise to the level of a *serious medical need* for purposes of a constitutional analysis. See <u>Griffin v. Gusman</u>, 2010 WL 1726896 (E.D.La. 2010)[1]; <u>Desroche v. Strain</u>, 507 F.Supp2d 571 (E.D.La. 2007)[2].

## 2. Deliberate Indifference

Even if Plaintiff's fractured finger was a serious medical need, there is no evidence that any defendant was *deliberately indifferent*. Plaintiff was treated by a nurse practitioner immediately following the accident. He received medication, immunization, stitches, and his wounds were cleaned. Later, he had the dressing on his wounds changed. Two days after the accident,

---

[1]Citing <u>Nance v. Kelly</u>, 912 F.2d 605, 607-08 (2d Cir.1990) (Pratt, J., dissenting) ("conditions that have been held to fall short of the constitutional standard" of a serious medical need include a broken pin setting an injured shoulder); <u>Dickson v. Colman</u>, 569 F.2d 1310, 1311 (5th Cir.1978) (inmate who had full range of motion in his shoulder despite continuing pain from old injury did not have serious medical need); <u>Duncan v. Owens</u>, No. 05-5066, 2006 WL 1999166 (W.D.Ark. July 17, 2006)("A broken finger is not an objectively serious medical need .... [Plaintiff's] only visible symptom ... was a swollen finger, and the x-rays ... showed only degenerative joint damage with the possibility of an old, healed fracture. A finger in such a condition, broken or not, is not a serious medical condition."); <u>Rivera v. Johnson</u>, No. 95-CV0845E(H), 1996 WL 549336 (W.D.N.Y. Sept. 20, 1996)("Prison inmates suffering from ailments such as ... a broken finger have all been held to fail to satisfy the constitutional serious-medical-need standard.... A broken finger, without more, simply does not present a condition of urgency ... which correspondingly merits constitutional protection.").

[2]Citing <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1444 (10th Cir.1996) (broken fingers were not serious medical need when plaintiff failed to complain of injury for two days); <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir.1990) (swollen, bleeding wrists from handcuffs that were too tight do not constitute serious medical need); <u>Dickson v. Colman</u>, 569 F.2d 1310, 1311 (5th Cir.1978) (inmate who had full range of motion in his shoulder despite continuing pain from old injury did not have serious medical need); <u>Brown v. Mcgregor</u>, No. 105-CV-0216WSD, 2006 WL 2167157, at *6 (N.D.Ga. July 31, 2006) (swollen finger, which turned out to be slight fracture of fourth distal metacarpal, was not a serious medical need when plaintiff failed to seek pain medication or further medical attention after initial examination).

he received an x-ray of his finger and a splint. This does not evince an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind. There is no indication that the defendants intended or desired for Plaintiff to suffer harm. They did not ignore him or refuse to treat him. He was at the hospital within 48 hours of his injury. He received treatment before and after, including extensive follow-up care.

On November 28, 2011, Plaintiff saw the nurse and nurse practitioner. [Doc. #1-2, p.24] Because there appeared to be dried blood under the skin, the NP ordered that Plaintiff be seen at LSU hospital again to determine the need for debridement. The LSU doctors determined that the wound was healing appropriately. Additional x-rays were taken, showing that the fracture was healing without any change in alignment. [Doc. #1-2, p.24]

Plaintiff was seen again on December 23, 2011 by the LPN, who noted that the wounds were healed. On January 9, 2012, Plaintiff was examined by the NP in the chronic care clinic. Lacerations were noted to have healed well. [Doc. #1-2, p.24] On January 10, 2012, Plaintiff was seen by the LPN when he complained of "partial movement and limited grip" along with numbness and tingling. Plaintiff was referred to the doctor. [Id.] On January 13, 2012, Plaintiff was examined by Dr. Kuplesky, who noted a flexion deformity of the middle finger. The doctor instructed Plaintiff to continue extremity exercises to prevent permanent deformity. [Doc.

5

#1-2, p.24]

On January 25, 2012, Plaintiff was examined by the Huey P. Long Orthopaedic Clinic.  He was given instructions on active and passive range of motion.  Upon his return to WNC, Plaintiff was given written orders by the NP for Plaintiff to exercise his hand twice daily.

Plaintiff's exhibits show that he received medical care in the form of daily wound dressing changes from December 1, 2011 through December 22, 2011.  Plaintiff even received occupational therapy at LSU's orthopaedic clinic on November 30, 2011, December 9, 2011, December 28, 2011, January 25, 2011, February 22, 2012, and March 14, 2012.  Plaintiff was examined at LSU again on May 23, 2012, where it was noted that he had no functional defect and surgery was not indicated.  [Doc. #1-2, p.19]  Plaintiff was officially discharged from LSU's orthopaedic clinic on May 23, 2012.

**3.   48 hour delay in x-rays**

Plaintiff received immediate medical care from a Nurse Practitioner following his injury, including stitches.  Although his finger was not x-rayed until forty-eight hours following the injury, this is not a "delay" indicative of an Eighth Amendment violation.  "Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm."  Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006).  As indicated above, there is no evidence of

6

deliberate indifference to Plaintiff's serious or non-serious medical needs. Moreover, there is no evidence that the 48 hours resulted in *substantial harm* to Plaintiff.

Finally, just as Plaintiff cannot demonstrate that he was denied constitutionally adequate medical care, he has not presented allegations that any policy or practice of supervisory officials or CCA resulted in the violation of his constitutional rights. See Kirven v. Thaler, 428 Fed.Appx. 342 (5th Cir. 2011)(citing Bustos v. Martini Club, Inc., 599 F.3d 458, 468 (5th Cir. 2010)).

### Conclusion

Plaintiff received timely and extensive medical treatment for his fractured finger, both at WNC and at LSU orthopaedic clinic. For the forgoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED AND DISMISSED with prejudice** as frivolous and for failing to state a claim for which relief can be granted pursuant to 28 U.S.C. §1915(e)(2)(b) and 1915A.

### Objections

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely**

objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.

THUS DONE AND SIGNED at Alexandria, Louisiana, this 10th day of February, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE